HARVEY SHELDON KLEIN and BARBARA DEANE KLEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klein v. Commissioner
Docket No. 13988-83.
United States Tax Court
T.C. Memo 1988-27; 1988 Tax Ct. Memo LEXIS 27; 54 T.C.M. (CCH) 1596; T.C.M. (RIA) 88027; January 25, 1988. Harvey Sheldon Klein and Barbara Deane Klein, pro se. Marilyn S. Ames, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1979 of $ 6,388.00. The sole issue for decision is petitioners' distributive share of Global Partners, Ltd.'s partnership loss. [1]
*28 All of the facts have been stipulated. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife and resided in Houston, Texas, at the time they filed their petition. They timely filed their Federal income tax return for the year 1979 with the Internal Revenue Service Center, Austin, Texas. In July 1979, petitioners subscribed to ten interests in Global Partners, Ltd. (Global Partners), a real estate limited partnership, at a total subscription price of $ 12,500. Petitioners paid $ 6,250 of the total subscription price at the time the subscription agreement was executed and signed a non-interest-bearing promissory note at the same time for the remaining $ 6,250. The note was due in a single installment on or before March 10, 1980. It was not paid during 1979. The subscription agreement signed by petitioners states: The undersigned hereby adopts, accepts and agrees to be bound by all the terms and provisions of the Partnership Agreement in the form attached as Exhibit A to the Memorandum and to perform all obligations therein imposed upon a Limited Partner with respect to the Interests purchased. If this *29 Subscription Application is accepted by the General Partner on behalf of the Partnership, the undersigned shall become a Limited Partner for all purposes. The partnership agreement, dated April 1, 1979, and attached to the offering memorandum, provides that the holders of the limited partnership interests were to have a 99 percent interest in net income and loss, and that the amount of each holder's share of income or loss was to be determined on the basis of that holder's "Allocation Percentage." The allocation percentage is defined as "that fraction, expressed as a percentage, having as its numerator the number of Interests held by such Holder of Interests and having as its denominator the total number of Interests held by all Holders of Interests." An interest is defined as "a Limited Partnership Interest in the capital, profits and losses of the Partnership. Each Interest represents a cash contribution of (see page A-26, item 2), by the Limited Partner who originally acquired the Interest." The page reference refers to three payment plans available to subscribers. Under these plans, contributions were to be paid either in full upon subscription or partially on subscription with *30 the balance due evidenced by a promissory note. The payment plan used by petitioners was not in the agreement that was part of the offering memorandum, but was attached to their subscription agreement. On August 10, 1979, an amendment to the limited partnership agreement was executed. The amendment listed the limited partners and the amount of capital each intended to contribute. Petitioners were listed as intending to contribute $ 6,250 of a total capital contribution of $ 231,250. The amendment also showed their limited partnership interest as 2.67567 percent, based on their and the total cash contribution. Several other amendments were made to the partnership agreement, including ones on April 14, 1979, May 1, 1979, and October 1, 1979. None dealt with the allocation of gains and losses among individual partners. The May 1 amendment added a payment plan similar to, but not identical with, the plan subsequently used by petitioners. On October 1, 1980, an Amended Agreement of Limited Partnership was executed. One reason for amending the original partnership was to "reflect more clearly the original intent of the parties." This agreement provided that the limited partners' *31 share of Global Partners' loss was to be allocated to each limited partner based on his "Target Allocation Amount," which was defined as his "Partnership Percentage" multiplied by the loss to be allocated among all of the limited partners. Partnership percentage was defined as "that fraction, expressed as a percentage, having as its numerator the total capital contribution subscribed by such Limited Partner * * * and as its denominator the total capital contribution subscribed by all Limited Partners * * *." Capital contributions included all money and property contributed by all partners or a particular class of partners, depending on the purpose of the calculation. Global Partners, a calendar year partnership, filed a Partnership Income tax return for 1979 with the Internal Revenue Service Center, Austin, Texas, on which it claimed an ordinary loss of $ 858,517. Petitioners received a Form K-1 (Partner's Share of Income, Credits, Deductions, etc.) from Global Partners. The form indicated that petitioners' share of profits and losses was 1.736 percent, that their capital interest was 2.661 percent, that their capital contribution during 1979 was $ 12,500 and that their share of *32 Global Partners' ordinary loss for 1979 was $ 14,904 (1.736 percent of Global Partners's total reported ordinary loss). Several other partners were shown as owning ten interests in the partnership and having the same capital interest, capital contribution and profit and loss sharing ratio. Others were shown as owning ten interests with a capital interest of 2.661 percent (and capital contribution of $ 12,500), but profit and loss share of 3.472 percent. Total capital contributions were shown as $ 465,000. After examination by the Internal Revenue Service, Global Partners' 1979 loss was reduced to $ 336,085. The sole question is the amount of petitioners' distributive share under section 704[2] of Global Partners' partnership loss. [3] That section provide, with exceptions not relevant here, that: "A partner's distributive share of income, gain, loss, deduction, or credit shall * * * be determined by the partnership agreement." Section 704(a). *33 Petitioners contend that they should be treated the same as the other partners who purchased ten interests and who were allocated 3.472 percent of the 1979 loss. In addition, they contend that the amended agreement signed in October 1980 was intended to, and did, merely restate the terms to which they agreed in July 1979, so that the 1979 losses should be allocated based on total capital contributions, which would give them 2.661 percent of the loss. Respondent contends that the agreement attached to the offering memorandum contains the terms that determine petitioners' share of the partnership loss and that a proper interpretation of those terms requires that the limited partners' share of Global Partners' loss should be allocated based on cash contributions by the limited partners in 1979. We note initially that the partnership agreement actually executed by petitioners in 1979 is not in the record. By the terms of their contribution agreement, however, petitioners adopted the partnership agreement attached to the offering memorandum. Indeed, the parties do not dispute that this agreement, or one substantially similar to it, was the agreement that was actually executed in 1979. *34 Under the 1979 partnership agreement, profits and losses are to be allocated to each limited partner based on the number of interests held by that partner. Interest is defined as "Interest in the capital, profits and losses" that "represents a cash contribution," with reference to several payment plans. The term "represents a cash contribution" may mean either that interest is measured by cash actually contributed or by the cash and the note that is given to the partnership and is ultimately to be paid in cash. While the meaning of this provision is not entirely clear, we think that respondent is correct and that profit and loss allocation should be based on actual cash contribution. Petitioners base much of their argument on the 1980 agreement being a restatement of the agreement into which they entered in 1979. Under the 1980 agreement, they would receive a share of the loss based on their total capital contribution, not just their cash contribution. While the 1980 agreement provides some support to petitioners, [4] several other elements, reflecting the actual operation of Global Partners, outweigh that factor. First, in one of the amendments to the partnership agreement, *35 petitioners' intended capital contribution is shown as $ 6,250, not $ 12,500 as petitioners contend it was. Second, in the same amendment, their interest in the partnership in May 1979 is given as 2.67567 percent ($ 6,250/$ 231,250, see p. 3 supra). Third, on the Form K-1 sent to petitioners for 1979, Global Partners reported petitioners' distributive share of the partnership loss as 1.736 percent, which is based on the cash actually contributed during 1979. [5] Finally, on the 1979 K-1s, several other limited partners were shown as having distributive shares of losses different (both higher and lower) than their shares of capital, indicating that the profit and loss percentages given for petitioners were not mere bookkeeping errors. *36 Whatever our interpretation of the 1979 agreement, we are unable to honor petitioners' claim that we allocate the same share of profits and losses to them as Global Partners allocated to those limited partners who paid their full contribution in 1979, because Global Partners based all limited partners' profit and loss shares on cash contributions. We must either make the allocation to petitioners based on their capital contribution or based on their cash contribution but, in either event, the result is a lower allocation than that given by Global Partners to the limited partners who paid their entire contribution in 1979. Furthermore, by basing the loss allocation on cash contribution, we are treating petitioners in the same manner as the other limited partners were treated by Global Partners. We hold that petitioners' share of Global Partners' 1979 loss should be 1.736 percent of the reduced partnership loss, based on cash actually contributed in 1979. Because of concessions by respondent, Decision will be entered under Rule 155.
Footnotes
1. In their petition, petitioners also disputed respondent's disallowance of their distributive share of the partnership's investment tax credit. Petitioners introduced no evidence on this issue and did not discuss it on brief, so we deem it to have been conceded. ↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Respondent has conceded that petitioners are entitled to deduct a loss of $ 5,835.00, that is, 1.73 percent of Global Partners' reduced loss. ↩
4. We further note that the 1980 agreement is not automatically controlling because, under section 761(c), the partnership agreement for a particular year includes "any modifications * * * made prior to, or at, the time prescribed by law for the filing of any partnership return for the taxable year (not including extensions) * * *." See also section 1.761-1(c), Income Tax Regs.↩ Global Partners' 1979 partnership return was due on April 15, 1980. The 1980 agreement was not executed until October of 1980. 5. Global Partners listed petitioners' interest in capital as $ 12,500 or 2.661 percent, based on the cash and note that they contributed. This is not inconsistent with a computation of petitioners' share of the loss based solely on cash actually contributed. ↩